**RECEIVED**
AUG 25 2025
U.S. DISTRICT COURT
DISTRICT OF R.I.

Motion; Writ of Habeas Corpus
2241    EMERGENCY

I, Sarah Cavanaugh (BOP #90889-509), come before this court alleging violations of the Due Process Clause of the Fifth Amendment of the United States Constitution. I am asking this court for a judgment stating that my rights were violated, for my immediate release, and for an injunction prohibiting my re incarceration absent correction of alleged violations.

I come before this court with a 2241 motion because it is the appropriate manner to challenge the execution of sentence, including the conditions of confinement. I am asserting that I have a liberty interest in remaining in community confinement and therefore am entitled to certain procedural protections before being re-incarcerated.

BACKGROUND

I was incarcerated at Federal Prison Camp (FPC) Danbury, in Danbury CT from April 2023 until May 2025. On May 15, 2025, I was released to community confinement under the Second Chance Act and reported to Houston Halfway House (RRC) in Pawtucket, RI. My current release date is August 10, 2026.

I resided at RRC for three months until August 15, 2025, at which time I was arrested by U.S. Marshalls and brought to Wyatt Detention Center. During those three months, I received four minor infractions (300 series incident reports; 309, 309, 311, & 309). My final incident report (a 309 violation), delivered to me on August 13, 2025, was the result of my asking a question about another resident on August 12, 2025. I did not go through the investigation or hearing process for this final violation, nor have I been read my rights.

On August 14, 2025, I submitted a BP-8 (an administrative remedy), stating my concerns that the incident report provided to me the previous day was missing factual information and my desire to informally resolve the issue. I have not received a response from this remedy, nor do I have access to a BP-9 form at current facility to continue administrative remedy process.

On August 15, 2025, at 10:13a, I was called at work by RRC staff and told to report immediately to the program. I returned immediately. Around 4:30p, U.S. Marshalls arrested me. At no time between my return to RRC program on that morning and the arrest by the U.S. Marshalls, was I informed that I would be re-incarcerated. I was not informed the reason for arrest, I was not read my rights, and I have not had a hearing regarding incident report from August 13, 2025.

PROCEDURAL DUE PROCESS CLAIM

I understand I must show that I have a protected liberty interest in freedom from certain government action in order to allege violations of the Due Process Clause of the Fifth Amendment.

In Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2D 484 (1972), the Supreme Court described parole as "an established variation on imprisonment of convicted criminals" designed to "help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined the full term of the sentence imposed." Morrissey, 408 U.S. at 477. The Court decided that the Morrissey petitioners had a liberty interest in remaining on parole, stating that even such

conditional liberty "by whatever name," is "valuable," and "its termination calls for some orderly process, however informal." Id. at 482.

Though my movements were monitored, I was not isolated within Houston House (RRC) and was able to resume a fairly normal life. I was released from prison, before the completion of my sentence, on the condition that I follow certain rules. The liberty I was given on community confinement, like that of a parolee, thus "includes many of the core values of unqualified liberty," and "its termination calls for some orderly process, however informal." Morrissey, 408 U.S. at 482.

In Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2D 418 (1995), the Court created a standard for assessing jail-related due process claims, holding that a restraint imposed upon a prisoner must present an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" in order to "create liberty interests… protected by the Due Process Clause." Id. At 484.

The liberties described in Morrissey included being gainfully employed, having the freedom to see family and friends, and the opportunity to establish a normal life. While on community confinement, I was living a life generally free from the incidents of imprisonment. I was gainfully employed, reuniting with my family, returning to my private residence on weekends and attending educational activities. I enjoyed substantial liberty and my confinement was not similar to that of my confinement in a prison. Because my community confinement bears such a strong resemblance to the parole program in Morrissey, I am asking that the court recognize I have a liberty interest that triggers due process protections.

Congress's purpose with the Second Chance Act was to assist individuals with reentry through RRCs. Given that Congress's express purpose for community confinement was to assist with reentry into the community, I assert that this case shares the societal goal of fostering inmate rehabilitation. My re incarceration has had an immediate disastrous effect on my physical liberty.

I have not had a preliminary hearing to determine whether there is probable cause to justify my detention, nor have I been given notice as to the hearing. I have not been given the opportunity to present evidence or a defense nor testify on my own behalf.

My termination from community confinement has created a grievous loss for both me and my family. It has created significant and immediate logistical concerns, specifically with my employer and my mental health providers. My re incarceration has had an out sized and deleterious effect on me.

LIBERTY INTEREST

I assert that I have a protected liberty interest in freedom from certain government actions because community confinement is an established form of incarceration that is designed to help adults convicted of crimes re-enter into society successfully as soon as they are allowed. Community confinement is more analogous to home confinement, a work release program, pre-parole, and parole than it is to confinement within a prison.

I am asking the court to follow Morrissey Young and Kim by finding community confinement so similar to home confinement, work release, pre-parole, and parole programs at issue in those cases, that community confinement also must create a liberty interest.

In Tompkins v. Pullen 2022 U.S Dist., the Government argued that that petitioner's release from prison was not like those of the prisoners in Morrissey, Young and Kim because the programs in those cases were designed to perform a particular function in the correctional process, specifically the reintegration of an individual into society. I was released to community confinement on the Second Chance Act, which specifically affords a prisoner an opportunity to adjust and prepare for reentry into the community, thus my release from prison was like those in Morrissey, Young and Kim.

ADMINISTRATIVE REMEDY

Exhaustion of administrative remedies is a precondition of habeas relief; a petitioner is required to present their grievance to the relevant custodial authority and to pursue relief through all available administrative appeals before filing a habeas petition in federal court. Muhmmaud v. Murphy, No. 3:08-CV-1199(VLB), 2009 U.S. Dist. Lexis 108357, 2009 WL 4041404, at 9(D. Conn. Nov. 19, 2009).

I filed an administrative remedy (BP-8) within 20 days of subject incident on August 14, 2025, pursuant to 28 C.F.R. 542.14(a) and though I did not complete exhaustion requirement, exhaustion is merely prudential in this case and I am asking it be excused. I do not have access to a BP-9 or BP-10 forms at current facility.

I am arguing that completing the administrative remedy process would be futile because the BOP has already decided individuals on home confinement and community confinement may be recalled to prison at any time for no reason at all and also that absolutely no process is due to individuals in a residential reentry center prior to their re incarceration by BOP. In Freeman v. Pullen, 658 F. Supp. 3D 53, the Government claimed that "the respondents' litigation position was and continues to be that no process was due prior to the petitioner's re designation." In that case, it was determined by the court that BOP does not recognize a need for due process, thus it would be futile for any inmate to seek redress on this point.

At the time of this writing, I have not had my rights read to me, had a hearing before a neutral decision maker, and have not received a written statement from a decision maker stating the evidence or reasoning that supports the ultimate decision of my re-incarceration.

RE DESIGNATION

Federal law grants the BOP the sole authority to decide where to house prisoners, and to transfer them between facilities. 18 U.S.C. 3621(b). That statute states that the BOP may designate prisoners to, and transfer them between, penal and correctional facilities. I was not at a penal or correctional facility, for I was in the community on community confinement and not in a traditionally custodial setting, such as a prison, at the time the government remanded me to secure prison custody. I am challenging my re designation because my re incarceration was in fact a sanction for misbehavior and that disciplinary actions do not automatically affect a liberty interest. Sandin, 515 U.S. at 484.

ADDITIONAL INFORMATION

As a resident in community confinement, I was informed by RRC staff that I could be removed from program if major infractions were committed. During my time at RRC facility, I was given substantial reasons from staff to believe that revocation would be inappropriate for minor infractions and that my continued progress (employment, treatment, and phase advancement) demonstrated my effort to my successful re-entry. Staff also provided me examples of other resident behavior (past and present) and

disciplinary responses to said behavior so I would have an understanding that Houston House does not employ a widespread practice of re incarcerating individuals on community confinement without them committing major infractions. I informed staff throughout my residence that I was struggling with adjustment and continuously advocated on my own behalf for mental health treatment.

While I was at Houston House, I engaged in care for abdominal pain that I first reported while in BOP custody in March 2024. I was hospitalized in June 2024 for pain and referred for follow-up from Danbury ER. In January 2025, I had a MRI while incarcerated due to weight loss, loss of appetite, and increased abdominal pain accompanied by blood loss. Upon returning to the community, I went to Dr. Colavitta, OBGYN, and was informed my internal birth control was lodged in my uterine wall. I have a follow-up appointment with Dr. Colavitta on 8/28/25 and Houston House staff were aware of appointments. I am in a significant amount of pain.

I am requesting this be filed as an emergency due to the time sensitiveness of my medical appointment, the potential loss of my job and to prevent my re-incarceration from continuing. If the court would be willing to consider an outcome of compassionate release, with supervised release remaining, in order to allow me to continue to engage in mental health treatment, recieve needed medical care, and not fear retribution from Houston House staff.