To:    Diamond Rivera
       Program Director
       Houston House
       67 Slater St, Pawtucket, RI 02860

From:  Sarah Cavanaugh
       Register #90889-509
       Current Resident at Houston House

Date: August 14, 2025

Dear Ms. Rivera,

I want to begin by expressing my respect for the staff and my appreciation for the opportunity to participate in this program. My goal is to work together in a way that is fair, respectful, and built on open communication so I can succeed in my re-entry. I understand that my responsibility is to focus on my own actions, progress, and compliance with the program, and I am committed to doing just that. I also believe that honesty and mutual respect are essential for moving forward in a positive way.

With that in mind, I am asking that certain information be corrected and/or added to Incident Report (Violating a condition of a community program; Code 309; Date 8/13/25) concerning the incident on 8/12/2025 between 5:20 p.m. and 7:30 p.m. at Houston House (RRC). I would also like the opportunity to work toward an informal resolution with RRC staff.

I am raising this dispute because I believe there may have been a misunderstanding in statements made to me by staff—specifically about having this individual's name without staff disclosure—during the phone calls I received on 8/13/2025. This information seemed inaccurate and left me feeling pressured to admit to something that was not true. My hope is to clarify what happened so the record reflects the facts, and so we can move forward with accuracy, fairness, and good faith.

Information to be Corrected and/or Added:
- Date of Incident and Time of incident is incorrect in two locations on document. On the top of the Incident Report the date/time of the Incident is identified as 8/13/2025 at 3:27pm and again identified incorrectly at document location 11. as 8/12/2025 at 3:27pm.
  - **The correct date/time of incident is 8/12/2025 at 5:20p-7:30pm.**
- The report does not include all facts related to incident, including staff behavior and disclosure, and is nonchronological.
  Specifically:
  - The first staff interaction in this incident occurred at the front desk between myself and staff member Olasunkanmi Ijaduola (known to this writer as "Kenny"), in which I asked if I was getting a roommate due to a bed being removed from my room. Kenny informed me I was getting a roommate the following day (8/13/2025) and that this individual's name was "Haley Lynn."
    - **This interaction and disclosure are not documented in incident report.**
  - My final interaction with staff was at the front desk with both Kenny and Janai, in which I asked if the name Kenny provided me was correct because the name provided did not correlate with a biological-female inmate listed in BOP/DOJ

systems/news releases. Janai rolled towards Kenny and both looked at his computer screen, disclosed that this individual's last name was actually "Rose," and that they were to present to Houston House at 11a on 8/13/2025 from Probation. I then showed the news release from DOJ on my phone that identified this individual as a biological-male "Anthony," and was informed by staff that this person was actually not assigned to my room, but the room next to me.

- **This interaction is not documented in the incident report.**

o  On 8/13/2025 at approximately 7:16a, staff member Destiny Soeum called me to ask me how I knew the new resident's name prior to their arrival. I informed Destiny that I was given the name by a staff member and she replied that staff had reported that I came to them with the resident's name and that it was not disclosed to me. I informed Destiny that staff member had given me resident's name and that I did not know or have any identifying information regarding this resident until staff disclosure.

- **This interaction is not documented in the incident report.**

o  On 8/13/2025 at approximately 2:53p, program director Diamond called me to ask me about incident and I reported her to the disclosure from staff and the questions I asked related to individual's room assignment and gender identity. She informed me that she had spoken to staff members individually and separately and that staff members reported that they had not disclosed individual's name to me and that I had "come to them," with name. I told her this was false and she told me she did not believe me, that I was lying about incident. She then informed me that I was not to ask any questions regarding other residents and that my questioning had created a hostile environment for individual due discussions by other residents "in a chastising manner."

- Incident report states that "Cavanaugh only admitted to approaching staff at feont desk and asking…" and does **not correctly document other important components of telephone call, specifically my statement that information was disclosed to me by staff.**

**Incident Report Delivery – 8/13/2025, 4:44 p.m.**
The incident report was delivered to me by Program Director Diamond, with Assistant Program Director Ari present. During our discussion, Diamond explained that she had spoken with staff who confirmed they had disclosed information and that she would follow up regarding inappropriate disclosure of HIPAA-protected information. Diamond apologized and acknowledged that I had not lied about the events in our prior phone conversation.

I asked many questions during the incident report delivery due to my lack of understanding of the specific violation. Asking questions about other residents is not listed in the Houston House handbook as inappropriate or a violation of program rules. Diamond clarified that if my questions had been directed only to staff at the front desk, rather than in the presence of other residents, I would not have received an incident report. Instead, I would have simply been reminded to maintain appropriate boundaries and only inquire about matters related to myself. Diamond explained that, because I asked about an individual's gender identity in front of other residents, my question became the source of other residents' inappropriate discussions. She instructed me to have no contact with the resident involved in this incident and to refrain from

asking questions about any other resident moving forward. I acknowledged my understanding and accept this as a valid program guideline.

I also shared with Diamond and Ari that, on multiple occasions, staff have disclosed information about other residents—sometimes in front of me and other residents. I explained that I understand and respect boundaries, referencing a prior interaction with a staff member where I was told they were not at liberty to discuss a particular issue, and I immediately ceased further inquiry. This context is relevant as it demonstrates my ability to respect boundaries. It is also important because my conversations with two of the staff members involved in this incident were reciprocal; had they not disclosed the individual's name; I would not have known any identifying information.

At no time during the incident, the delivery of the report, or since, have I subjected this individual to demeaning, intimidating, or offensive language in front of residents or staff. I have not engaged in unwanted physical contact, threatened harm, displayed offensive images, made lewd gestures or jokes, or participated in systematic harassment targeting this individual. During the incident report delivery, I clearly stated this, and both Diamond and Ari acknowledged that I had not engaged in any of these behaviors. I do not condone harassment or discrimination toward any individual on any grounds.

I am requesting that the incident report be amended to accurately reflect the chronological details of staff interactions as described above, and I wish to work toward an informal resolution of this matter.


Thank you,


Sarah Cavanaugh

BP-A0205
MAR 10

**INCIDENT REPORT (CCC's)**

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

### Part I - Incident

| 1. Name of CCC: Houston House | | | | |
|---|---|---|---|---|
| 2. Name of Offender Cavanaugh, Sarah | 3. Register Number 90889-509 | 4. Date of Incident 08/13/2025 | | 5. Time 3:27 PM |
| 6. Place of Incident RRC | 7. Component FBOP | 8. Type of Offender | | |
| 9. Incident Violating a condition of a community program. | | | 10. Code 309 | |

11. Description of Incident     (Date     08/12/2025     Time     3:27 PM     staff became aware of incident)

On 8/13/2025 the program director was notified that on 8/12/2025, Houston House staff members Janai Abis, Olasunkanmi Ijaduola, and Ashanti Dorsey were approached by FBOP resident CAVANAUGH (REG #: 90889-509) to discuss the gender, charges, and room assignment of an incoming resident. The resident that CAVANAUGH (REG #: 90889-509) was referring to is a transgender individual who is an SO. Please note that Houston House intake and release coordinator Destiny Soeum had already assigned this resident with the single bed, 127 L, and not with CAVANAUGH (REG #: 90889-509) because of the gender identification. There was no discussion with CAVANAUGH (REG #: 90889-509) about this incoming person, their charges, or gender identity.

Staff member Janai reported that Sarah approached her in the kitchen of Houston House on 8/12/2025, in front of other residents, asking questions about the incoming residents gender and charges. CAVANAUGH (REG #: 90889-509) made statements of discomfort in potentially receiving a room assignment with a transgender person due to their genitalia, as well as their discomfort with their charges as an SO. Janai told CAVANAUGH (REG #: 90889-509) to check in tomorrow with admin if they had any concerns regarding room assignments.

Staff member Olasunkanmi reported that later in the evening on 8/12/2025, CAVANAUGH (REG #: 90889-509) approached the front desk and asked if she was receiving a roommate. CAVANAUGH (REG #: 90889-509) noted they found online the person who was coming, FBOP inmate Hayley Lynn Rose (REG #: 42181-509), knew their name prior to transitioning from male to female, and were uncomfortable receiving a roommate who was transgender. CAVANAUGH (REG #: 90889-509) also noted that they were aware that they were an SO, and did not want them as a roommate. CAVANAUGH (REG #: 90889-509) was adamant in knowing whether or not this person was coming to their room. Staff member Olasunkanmi let CAVANAUGH (REG #: 90889-509) know that they could discuss their feelings tomorrow with admin if needed.

Staff member Ashanti reported that upon her exit for the day on 8/12/2025, CAVANAUGH (REG #: 90889-509) approached her and asked if she was getting a roommate. Ashanti reported that CAVANAUGH (REG #: 90889-509) was asking for Ashanti to confirm or deny whether or not the new intake's sex at birth were male or female. Ashanti said that CAVANAUGH (REG #: 90889-509) stated that, "if they still have one, they can't room with me." In this instance, it is believed based on the tone of voice that CAVANAUGH (REG #: 90889-509) used, that "one" is referring to a penis. Ashanti let CAVANAUGH (REG #: 90889-509) know this discussion was not appropriate, and if she had any concerns about room assignments, to check in with administration tomorrow.

Today 8/13/2025, the program director was approached by intake and case manager Destiny Soeum and case manager Lori Foster and was notified that other residents were discussing the arrival of this new resident in a chastising manner with CAVANAUGH (REG #: 90889-509) noted as the person these residents received the information from regarding their gender identity. This, in turn, has created a hostile environment for this new intake on their first day at the program.

Upon this report, the program director called CAVANAUGH (REG #: 90889-509) and asked if these events occurred. CAVANAUGH (REG #: 90889-509) only admitted to approaching staff at the front desk and asking about whether or not she was getting this individual as a roommate, but CAVANAUGH (REG #: 90889-509) specifically stated their concerns were regarding their charges, not their gender identity.

The program director notified CAVANAUGH (REG #: 90889-509) that asserting their preferences regarding room assignments is inappropriate, and the targeting or harassment of any individual at Houston House for any reason would not be tolerated.

For creating a hostile environment for the new intake, and overstepping boundaries by inquiring about the gender identity, genitalia, charges, and room assignment of another Houston House resident, CAVANAUGH (REG #: 90889-509) is in violation of code 309: Violating a condition of a community program.

| 12. Signature of Reporting Employee *Diamond Rivera* | Date and Time 8/13/25, 4:25 PM | 13. Name and Title (Printed) Diamond Rivera / Director |
|---|---|---|
| 14. Incident Report Delivered to Above Offender by *Diamond Rivera* (Continued Below) | 15. Date Incident Report Delivered 8/13/25 | 16. Time Incident Report Delivered 4:44pm |



Record Copy - Central File Record; Copy - DHO; Copy - Inmate After UDC Action; Copy - Inmate Within 24 Hours Of Part I Preparation

Prescribed by PS 7310

Replaces BP-S205.073 or MAR     94

**(b)** *Investigation.* **After you receive an incident report, a Bureau staff member will investigate it.**

The Investigating Officer is an employee at the supervisory level who conducts an investigation of alleged inmate misconduct.   The Investigating Officer must be IDC-certified, and may not be the employee reporting the incident or otherwise be involved in the incident.   The officer is ordinarily a Lieutenant, but the Warden may appoint another staff member.

Staff conduct the investigation as promptly as possible.   The Investigating Officer is ordinarily appointed within 24 hours of the incident report.   The investigation should be finished within 24 hours after the appointment.

When it appears likely that the incident may involve criminal prosecution, the investigating officer suspends the investigation.   Staff may not question the inmate until the FBI or other investigative agency releases the incident report for administrative processing.   The incident report should then be delivered to the inmate by the end of the next business day.   The time frame for processing the Incident report is suspended until it is released for processing.

The Investigating Officer may informally resolve the Incident report (except for prohibited acts in the Greatest or High severity level categories) or conduct an investigation consistent with this section.

**(1)** *Information:* **The investigator will specifically inform you:**

**(A)   of the charge(s) against you; and**

**(B)   that you may remain silent at all stages of the discipline process, but that your silence may be used to draw an adverse inference against you at any stage of the process.   Your silence alone, however, cannot be the basis for finding you committed the prohibited act(s).**

**(2)** *Statement:* **When the investigator asks for your statement, you may give an explanation of the incident, request any witnesses be interviewed, or request that other evidence be obtained and reviewed.   However, the staff investigation of the incident report may be suspended before requesting your statement if it is being investigated for possible criminal prosecution.**

The Investigating Officer provides a copy of the incident report to the inmate at the beginning of the investigation, unless there is good cause for later delivery, such as absence of the inmate from the institution or a medical condition that argues against delivery.   If the investigation is delayed, any employee may deliver the charge(s) to the inmate.   The reason for the delay must be documented in the discipline record.

*From BOP.gov*
*Program Statement 5270.09*
*Inmate Discipline Program*

- Comments on the inmate's prior record and behavior.
- Analysis of any conflict between witnesses.
- Conclusions regarding what happened.

The investigator must record all steps and actions taken on the incident report and forward the relevant materials to staff holding the initial hearing.

**The inmate does not receive a copy of the investigation (Sections 23 through 27 of the incident report).** However, if the case is ultimately forwarded to the DHO, the DHO must give a copy of the investigation and other relevant materials to the inmate's staff representative, if requested, for use on the inmate's behalf.

The UDC chairman or DHO taking **final** action ensures that the required information is entered into SENTRY. The unit team files all discipline documents in the inmate's central file.

**(3) *Informally resolving the incident report.* The incident report may be informally resolved at any stage of the disciplinary process, except for prohibited acts in the Greatest and High severity levels, or as otherwise required by law or these regulations. If the incident report is informally resolved, it will be removed from your records.**

The Bureau encourages informal resolution of incidents. However, prohibited acts in the Greatest severity level (100 level) and High severity level (200 level) may not be informally resolved, and must be referred to the DHO. Moderate severity level (300 level) and Low severity level (400 level) offenses can be informally resolved at any stage of the process. A record of any informal resolution is maintained in SENTRY. However, the incident report is not filed in the inmate's central file.

Staff may suspend discipline proceedings up to two calendar weeks while informal resolution is undertaken. If informal resolution is unsuccessful, staff may reinstate disciplinary proceedings at the stage at which they were suspended. The time requirements then restart at the point at which they were suspended. Staff are required to write the incident report before starting informal resolution so the facts of the incident will be preserved if informal resolution is not successful. While informal resolution requires the consent of both staff and inmate to be successful, the determination to informally resolve an incident report is solely at the discretion of staff.